On behalf of Mr. Althoff, Joe C. Perko, on behalf of the people, Mr. Edward Randall Hussain. Thank you. Ms. Perko, you may proceed. Good morning, Your Honor. Mr. Althoff appeals his conviction for driving under the influence of alcohol. Our claim on appeal is that there was a discovery violation, in fact two discovery violations, and that the trial court erred when it failed to provide any remedy for these violations. The two violations were, first of all, the failure to produce a video of the squad car recording at the scene of the arrest. This, of course, would have shown all the field sobriety tests, and it's our position that the proof in this case was not particularly strong, but such proof as there was, was primarily of the field, of the roadside sobriety tests, so the relevance is quite clear. Another car, another squad pulled up during the course of the stop, according to what I remember from the evidence. Did that car have its dash cam on? I don't think we have evidence one way or another. So I do recall that somewhere in that period of time, the arresting officer's squad likewise was moved. And this has some significance in our case because our claim regarding the discovery violation, and I would, just to clarify, we have a squad car recording that we claim existed, and there also was a booking room recording that should have been about an hour and a half long, but one hour basically in the middle of the recording is missing, is blank. But now, counsel, you had mentioned that you felt what was missing was potentially important, but you're not contending that this contained material exculpatory evidence, are you? Well, yes, we are claiming that it would have contained exculpatory evidence. I mean, the defendant in this case, Mr. Elthoff, testified, and he testified that he did not believe he was impaired. And there are some differences between his testimony at trial and the arresting officer's testimony at trial regarding the sobriety tests and the results of the sobriety tests. So we do believe that the squad video, as well as the booking room video, would have been exculpatory, but particularly the squad video because of the reliance by the State for its proof on the field sobriety testing. So, yes, we do claim that it would have been exculpatory. But you're not claiming that the failure to produce it was due to bad faith? We don't have proof of that. I mean, that was conceded by trial counsel in the trial court, and it was conceded. So we simply don't have proof of that. But, however, so our briefs, of course, discuss both the booking room recording as well as the record of the squad car. We're going to concentrate this morning on the squad car video. It is our position that the evidence that the motion to dismiss or hold other sanctions proves that the equipment in the squad was in working order. And it is our position that if it was in working order and giving evidence that it was functioning, which was the arresting officer's testimony, that the necessary inference from it functioning is that it was working to do what it was supposed to do. And what it was supposed to do, obviously, was to capture the events at the scene. The alternative argument, in light of what the State has argued, but this is an alternative argument in our opening brief and continued in our reply brief. Our alternative argument is that the burden was on the State to explain the loss of this evidence, and the State failed in any way to sustain that burden. The State's argument, very simply, seems to be that no recording ever existed. And it relies for this conclusion on a sentence in the trial court's findings in which the trial court stated there isn't even evidence that the squad video actually ever existed. Now, we acknowledge this statement in our opening brief. I believe it would be page 23, and, of course, we have discussed it again in our reply brief. Our position is that this statement by the State is taken out of context, and in its context, it is clear that the trial court accepted that the equipment in the squad car video, and that would be the microphone and the camera, were working, but that somehow, for reasons unknown, the information captured by the squad car equipment was lost when it was uploaded into the server at the police department. So the briefs discuss this factual background, and I want to... The record reflects? Okay. Didn't the record reflect that not only the information on the video in this particular case wasn't on the recorder, but there wasn't anything else on the recorder as well, or did I misunderstand? I think you're referring to the SIM card. Yes. Well, I'm referring to the camera and its contents or its elements, which was that when they attempted to find, for purposes of preservation and production, the video segment of the entire memory card, they couldn't find anything on the memory card. In other words, they couldn't find the prior stop before this particular stop, and they couldn't find anything after this stop if there was one. Yes, correct. In fact... So therefore, it's not that they just lost this one episode or this one scenario. The card was void of data that was recoverable. Well, the problem is, and this has to do with the state's burden of proof, the problem is, and I have read the testimony in this case really almost countless times, the problem is that without somebody who is really knowledgeable about the functions of the components of this equipment, we can't answer these questions if you reject the argument that the necessary inference from the fact that the camera and the mic were functioning is that the equipment in the squad was working and therefore was working to capture the scene. If you reject that inference, and I mean, you know, the state is kind of beyond rejecting the inference. The state wants to say that the proof definitively shows that the evidence never existed because of the court's statement. But the court's statement, we would submit on its face, indicates that the court doesn't know what happened or the court isn't sure what happened. The court is not saying that the evidence exists to prove that the squad video was not captured. It's just saying there isn't even proof one way or the other as to whether it is captured or not captured. But even assuming that you are going to reject this inference that we claim, then the question becomes what was the state's burden? And this question of the state's burden, which is an essential part of our argument that is raised in our opening brief and continued through the reply brief, the entire matter of the state's burden of proof is never addressed by the state, to the best of my knowledge, in its answer brief. Can I throw a hypothetical at you, please? Let's say that there's police department policy that says that when there's a DUI that the investigating or the arresting officer is supposed to prepare a police report. And the defendant files a motion for production. And the response is the arresting officer never wrote a police report in violation of department regulation and he had a letter of censure or reprimand placed in his personnel file. Now, if you are going to argue that there was a discovery violation because the protocols weren't followed and therefore there wasn't a police report prepared, then that's somewhat different than making the argument which seems to be what you're doing, which is, no, what really happened was the police officer did make a police report, but he destroyed it because it was so exculpatory and the police were going through the charade in order to rationalize the destruction of the police report. Because your premise is there was a police report, so to speak. There was a video. Correct. And you said, as the judge said, he said, there's no proof that there ever was a video. And I'm conceptualizing in my mind, if I were the trial judge, I would say, did anyone ever see a rendition, i.e., did the cop, pardon me, the police officer, push a replay button on the camera and he actually saw an image? And then he went into the police station and then it disappeared? Because that I don't think happened, did it? That it disappeared? Or that he pushed a button? No, that he actually played it back and reviewed it before he came into the police station. There's no proof that he did that. Correct. There's nothing on the record to indicate that anybody ever saw a video replay or a video image. Correct. Correct. But with reference to the hypothetical that you are posing, I mean, that hypothetical can be used in the context of these very discovery problems because the case law in the discovery area has made a distinction between those cases in which the evidence never existed. So the first question is, did the evidence ever exist? And it's our position based on what we say is a necessary inference from equipment that is working. The necessary inference when you see equipment working is that it is fulfilling its function. And the function of this equipment was to capture the occurrences in terms of the squad at the scene. So it is our position that it was captured. That's the inference. That is a prima facie case. At that point, the burden, I mean, you could read the case law to say that the burden exists on the State in all circumstances, but it certainly exists in this case where we made a prima facie case. Did the failure happen as an act of God? Did it happen as static electricity? Did it happen as a breach of duty, meaning negligence? Did it happen based upon a malevolent, intentional act of disruption? There are many ways in which this, your inference, is refuted. Correct. And the State could have refuted it if they had the evidence to refute it. But we do not know on this record, for instance, I mean, you used the example of, you know, some electronic interference or whatever, some, I'll call it a mechanical or electrical malfunction that is inherent to the machine in question. But it's a very different question if there is user, if it is a fault of human error. And we don't know this. The State produced absolutely no evidence at the hearing on the motion to dismiss or for other sanctions. They produced no evidence, no. Didn't an officer, I think his name is Meeks, who has some responsibility for this transition from squad car to the server, say that he looked at that SIM card where it should be and it was empty from the 18th of October until this date, the 30th of October? Correct. But what the record does not tell us is what the relationship of that SIM card is to the squad equipment and then to the server. I mean, we don't know that. We do know that he retrieved the SIM card from the squad car Scott used. Scott's the arresting officer. Although anyone can access that card, only Meeks and Cook have the authority to pull it. And so that, again, is your prima facie, that they're the only two that can pull it. He's the one that pulled it. He retrieved the card. He did not notice anything unusual. And then he put the SIM card in the computer to manually upload. Right. Correct. But he does not say that because the SIM card was empty that that necessarily means that despite the apparent functioning of the squad equipment, that that squad equipment was not recording. But wasn't that a logical inference? If it's empty and it's in there to record, how could that not be the inference? I don't know what the function of the SIM card is. What does SIM card mean? I don't know. Well, then why are you talking about it? Because I don't know. Excuse me, Your Honor, but. . . My point is in today's society, anybody who has a cell phone that has a SIM card in it, assuming it's the same thing, has some general idea if they deal with where the memory is going on the smart phone. Does it go into the SIM card or do they put it on an additional chip or SD card that's in the phone? And so there's a level of intellectual knowledge that suggests that by using my common sense and everyday knowledge, I understand that the SIM card is where the memory is. I have a dash core cam that's supposed to record people running into me, and I read the directions and it tells me the SIM card is supposedly where all this resides. I'm supposed to disregard all the knowledge that I've acquired over three-quarters of a century? I mean, assuming that is accurate, assuming that is accurate, that that's where the memory goes, that does not establish that the squad did not capture the recording. It's that it didn't transfer it for whatever reason to the SIM card, which is. . . whether it is a SIM card problem or whether it is an uploading problem to the server. I mean, you're suggesting that the memory was somehow lost on the SIM card, which still, with due respect, does not impact my position that the, that it was captured. And it's unlike those cases where the evidence never existed. I will, I mean, I will recognize that this is a rather, let's say, technical question, and it's our position that it really, that really it is not fair to use the SIM card comparison from a cell phone. I mean, I've used a SIM card in a cell phone. I've used it in a camera. I understand that. But the equipment I was using it on was not equipment that was synced to transfer the information from my SIM card to a server, which is what we're saying now. And I am not at all sure, in fact, from this testimony. . . When the vehicle came within proximity of the police station, either the information that the recorder records either is uploaded from the SIM card or it's uploaded from some other memory cache other than a SIM card. Correct. And there was no testimony whatsoever that there was any memory cache in the camera in the vehicle. The only evidence was the SIM card. The fact that the police officer attempted to comply with discovery by uploading the SIM card and was unsuccessful and claimed that he was unsuccessful in uploading the card because, in his opinion, the information did not exist. If that's what he said, did he not? He said it not only didn't exist, it didn't. . . 18 days where it didn't exist. He said there was nothing on the SIM card.  There is another piece of testimony that says that when the squad comes in and the server automatically removes the information from the squad and erases the information because it's now in the server. So based on that piece of testimony. . . I'm not saying that the police officer attempted to comply with discovery by uploading the SIM card. It would be a futile act. I'm telling you. What my inference is, is that they were conspiratorially going through a charade in order to establish the premise that you're suggesting, which is when it was uploaded, it was destroyed because it was taken off the SIM card. And. . . Well, I'm only telling you what the. . . I am not attempting to testify. This is evidence. . . No, but this is the logic of your rationale or your argument, that this is only reasonable or rational if you buy the argument that they're trying to hide the fact that they're suppressing the evidence. Well. . . Because I don't know how you can claim that it's anything but malintent to, quote, unquote, go through the process of phishing through the SIM card and then claiming that there's nothing on the SIM card and therefore we can't produce it because if it's someplace else, then he's lying. Well, you know, with reference to motives, obviously not necessarily something that we have to prove and particularly not have to prove in this discovery violation context where the court's decisions specifically have said that the failure to produce discoverable evidence is a violation and irrespective of the good faith or the bad faith of the government. So we don't have to show this and we don't have to have that motive. But nevertheless, that having been said, it is really rather highly suspicious that the most important evidence that we've been talking about, which is the evidence of the field sobriety test, was lost, but not only that, but virtually the entire segment of the booking room procedures, which is less important as a proof issue, but there's no explanation for any of this. I mean, truly, we would submit that the law becomes not the law if rules are not followed. And the rule truly is that the burden is on the state to explain its failure to produce relevant evidence which has been requested. And this is a decision of this court that we rely on. Is it correct to say that your argument, your position, is that if something is not produced, then it is presumed to be a violation and as you said just now, it's irrelevant as to whether or not the state did or did not intentionally fail to preserve it? I'm not going to say it's irrelevant, because the bad faith of the state is an element in assessing what remedy should be. It's a factor in assessing what remedy is appropriate for a discovery violation. But, I mean, we did more in this case than just say, you didn't produce something, show us what you got. I mean, we put witnesses on the stand to try to explain this problem, and they did not explain this problem except for acknowledging that the equipment was working. I mean, I respect your Honor's opinion regarding the SIM card, but it is our position that somebody, a witness, would have had to have testified that that SIM card, that the blanks on the SIM card indicated that that recording was never captured. And I don't think that you can make that conclusion on this record when you have a piece of testimony that is saying that when the squad enters the range of the server, the server uploads the information from the squad and erases what's in the squad. And that, the only problem I have with that is your time has expired. Thank you. And if that were true, then the, I don't see why the officer would have said, not only was it erased this particular thing or incident, but it also erased 18 days. Now, why would he say something like that if what you just said was the norm? Because if supposedly that car was used once within the prior 18 days, at least whatever number of days that car was previously used, if it had come in, it should have erased whatever particular days that it came in most recently and wiped off everything that was on that SIM card. So your inference seems to be inconsistent with the reasonable interpretation or extrapolation of the testimony of the police officer, because if your interpretation is correct, then every single time a squad car comes into that vicinity, the entire SIM card should be erased, and that doesn't seem to be what he was implying. Excuse me, Your Honor, but I will take my seat properly. But the alternative interpretation of this matter is that the understanding of the SIM card, with all due respect that Your Honor has, is not an accurate understanding. It doesn't make any difference what I think a SIM card is. I'm telling you that if he thought it was unusual that a SIM card is completely wiped every time the squad car comes, you're saying no? He didn't say the SIM card. He said that the information from the squad car, without specifying the SIM card, without specifying some other receptacle of memory, I mean, I just don't want to be inaccurate, but as I recall the testimony, what he said was that when the squad enters the range of the server, the server automatically uploads and actually erases what was in the squad. He did not say the SIM card says something to the effect of the information that was in the squad. So it is that piece of testimony that causes me to believe that my understanding of the SIM card, which is similar to Your Honor's and that I say I experienced with the camera and with the cell phone, is not necessarily the same function of the card in this situation, but it's something different. So is this based upon what you just said? Does that then imply that the SIM card is a backup cache of information? I'm guessing. And if it's a backup cache of information and there's nothing on it, then would that mean that the tree fell in the forest and nobody heard it or that there was no tree in the forest ever to begin with? Judge, I'm sorry, but I don't think we can say what it means, and the reason we can't say it is because the State did not make this clear. I see. Okay. You'll have a chance to make rebuttal. Thank you. Thank you. Mr. Seneca, are you ready to take this on? I am, Your Honor. So which is it? The tree didn't fall or there's no tree that ever fell? First, good morning. My name is Frank Seneca. I represent the people in this matter. Counsel, may it please the Court, I'm going to pick up from Officer Meek's testimony about what he did with the SIM card, and that should answer it, I think. He brought it into the station and put it in his computer, and this is his testimony. There were files on there. I uploaded them to the view vault, and this is on page 85 of the record. And then tracking down to his second response to a question, after review of that card it appeared that from the 19th of October until the day of the incident there was nothing, but there were things before the 19th. So there were things on that SIM card, and they were not recorded. The SIM card is the only inference that could be gleaned from this record, and it is the inference that the Court accepted as fact. I can't sum it up any more. There's one possible alternative, as slim as it is, similar to the fact that sometimes gravity might actually suspend its course, and that is that the information was in the main cache of the recorder of the dash cam, but for some reason it was never transferred to the SIM card as backup. There was no testimony about there being more than one source of memory in the dash cam. The way I read the testimony is that the only source of memory is this SIM card. That's the way I read it because there's no reference to anything else. What about Ms. Perko's statement that when the car comes into proximity to the police station that the information is uploaded and then it's erased? There is that testimony, but we know that, like you pointed that out, Your Honor, if there was stuff on the SIM card that was not happening, and there was stuff on this SIM card. So that process was not happening. There is another possibility, and that is that it was defective prior to the 19th of October, and then it started working properly after the 19th. Maybe that's not the inference that the trial court accepted. That's ultimately what we're talking about. Was it against the manifest weight of the evidence for the court to say that this video ever existed? I can't dive deep semantically and rhetorically the way opposing counsel has what it means for a recording to exist. I can't follow that reasoning. Our obligation is to produce discoverable evidence in our possession. There is no evidence that we possess a recording of this stuff at any time, and that's where this whole analysis ends. There's the threshold question of whether there was a discovery violation, and then if there was, you move on to sanctions. Wasn't there some testimony by the arresting officer that he looked at the dash cam and it was blinking red, which supposedly means that it's operational? Yes. So that is, to my knowledge, the only evidence that that thing was operational. The camera itself was operational. The camera itself. But the portion that captures what's coming into the camera is clearly not operational. When you say captured, you mean captured? Because when you capture something, to me that means it is then transferred to pixels on the screen or it means it's recorded into a memory bank. It's the latter, Your Honor. It's the latter. And, again, I'm a techno-peasant. I don't really understand the technology. So regardless, the other point that I wanted to make is, well, there's a couple of other points. Number one, we should not be talking about bad faith here. There is no question that this was a technological error. Defense counsel admitted it time and time again below that this was a technical malfunction. Well, there is some. Maybe it was technical, but it's rather strangely coincidental that the two pieces that relate to this case are either not available or incomplete. How does this happen? I completely agree, Your Honor. Was there some sort of a force that hit the police station? I mean, something happened. That is an unfortunate set of facts for me to be dealing with in a vacuum. But these aren't facts in a vacuum. These are facts that were elicited before the trial court. The trial court said there is no bad faith. And time and time again, defense counsel said below there was no bad faith. So we're not talking about a due process young blood issue. We're talking about an Illinois Supreme Court rule discovery issue. So for opposing counsel to start mentioning bad faith here I think is inappropriate, wildly inappropriate. But you're right, Your Honor. And with regard to the booking room video, the per se count was dismissed. The relief, any relief the defendant could have got with regard to that booking room video was obviated when the court directed the verdict on the per se count. So it's no accident that what she talks about in her brief exclusively almost is the squad video because the booking video is not going to do anything. But the booking video could be considered evidence that this just doesn't happen without something. You mean again, then we're talking about bad faith? Well, no, I think what she was also saying was that, all right, you had police officers who said this is the way it works. But your position is it didn't work. So shouldn't you have had someone else maybe who installed the systems from that company to testify how this could have happened? Well, that brings me to the other point I wanted to make about this burden shifting, which counsel is saying should have happened, that somehow the burden shifted to us to help her prove that there was a discovery violation. We are responsible to produce relevant, discoverable evidence within our possession. So if something is not in existence, it is not in our possession. And she cites Chamas for the idea that somehow the burden shifted to us. Your Honor, you'll be able to tell us you wrote Chamas. That's in reference to the sanction component of a discovery violation. The burden shifts to the people to provide an excuse for not having turned over evidence in their possession. That's when the burden shifts to us. The prima facie case, in my mind, includes the idea that a video existed at some point or a recording or whatever we want to call it. Well, since everything is assumed to be automatic here, and I think you even have to concede that, there isn't anything that this officer had to do other than go through the format when he gets in his car, just like when he checks a radar gun or something like that, goes through the protocol. He went through the protocol, and something happened. So why did something happen? And wouldn't that be an element of proof why that happened? If you're going to say it was a technical issue, and that's been the State's position the entire time. Hey, this was a technical issue. We did nothing. Well, then what's the technical issue? Element of proof for what, Your Honor? That it was a technical issue. Well, if we're talking about whether there was a discovery violation, I think defense counsel could have subpoenaed someone who had some knowledge of view ball and could have examined the police car and the SIM card and could have done all those things, which I believe it was her burden. I believe the case law supports that because it's our obligation to turn over discoverable evidence in our possession. The case law says that over and over again. Did any witness testify that they ever saw an image? No. Did anybody ever testify that they destroyed an image? No. So until there is some testimony indicating that there's an image, how is it that the existence of an image has been established? It hasn't. Does it make any difference why it doesn't exist? Well, that's actually a really good question. We know from the case law that if the officer forgets to turn on the switch to do the recording, that's okay. We know that from Olson, where the audio component, he forgot to turn on the audio component, and Your Honor said there's no discovery violation because an audio file never came into existence. We also know from, I said Olson. Actually, that was Trouble. We know from Olson that if the officer positions his car in such a way that it doesn't record the traffic or the sobriety test, we know that that's not a violation. So if those two things aren't a violation, how can it possibly be so that a technological failure is a violation? When we have Officer Scott saying how dutifully he went through to check to see if the camera was working, and as soon as he came back, he noticed it hadn't been uploaded, and so he immediately emails his supervisor to check the SIM card, and the SIM card is immediately checked, and it's discovered there's no recording. We want the officers to behave this way, to act in this way. We don't want them to forget to turn on the switch or to position their car in such a way that it doesn't capture the video, but the lesson learned here, if this was a reversal, is it's better not to have them turn on the switch. It's better not to point your car at the field sobriety test, because if a technological glitch is reversible, then why ever make the recording in the first place? There's no obligation to. State police have to make the recordings, but their failure to do that is not even redressable as a discovery violation. So what would the point be? I mean, it would be an extremely bad precedent to set that a technological violation or a technological glitch can result in a discovery violation. How do we even know it's technological? Because there was no other explanation for it. We eliminated user error. Well, my point is, there are things in the heavens that may or may not exist. If they don't exist, we don't really ask questions about why don't they exist. Or, if they ever existed, why did they cease to be? So when you say that it's a technological problem, my point is, why do we go there if it was established that it never was? What is the significance, unless bad faith is involved, why it never came into existence? That's why it's litigated that way, Your Honor, to eliminate bad faith. That's exactly why, to say this isn't a Youngblood situation. It's an alleged Supreme Court ruled discovery violation that just was not proven by defense counsel. And finding no discovery violation, you can't move on to sanctions. Are you aware of any case where the question seems to be so paramount and obvious, which is in order to establish a discovery violation, the movement has to establish a prima facie case that the evidence ever existed? Well, the case law in this area, which peculiarly enough is a lot of second district case law, talks about there's no discovery violation for something that never existed. So, I mean, it's manifest in the case law if it hasn't been spelled out. That isn't my question. I apologize. My question was, whose burden is it to establish the existence? I said, is the movement required to present a prima facie case of its existence? And you responded with a non-answer, at least not to my question. I apologize if I misunderstood the question. It's the people's position that it's the defendant's burden to prove that it existed. I mean, he has full access to the components. And then once that's established, then is it your responsibility to establish why it no longer is in existence or why it hasn't been presented? Under the case law, if it came into existence and we did not turn it over, it would be a discovery violation. So that would be the end of it. What happens if, in fact, it's destroyed? That's Shamus. We get sanctioned. Shamus, Justice Hutchison's opinion. No. I believe there's case law that indicates that you destroyed it before the motion to produce was made. And, therefore, when the motion to produce was made, it wasn't in existence. And, therefore, it wasn't a violation. So I guess really what we're talking about is it not only has to be in existence. It has to be in existence before the motion to produce is made. There's case law that Blackwood is right on that. And if you establish after a motion to produce that it was destroyed, but it was destroyed before the motion to produce, you're exonerated. Is that correct? Well, I think we have some burden to hold on to it at some point in terms of the view of a stop. And that may be a common law obligation. Common law or statutory, because I don't think in common law they had video cameras. Oh, true. That's a good point. I appreciate that. I don't even think they had smartphones or SIM cards. Okay. Any other questions? Thank you. Let me get my chisel. Ms. Perko, you may proceed. I want to talk a bit about this burden shift issue. So I argued that we presented a prima facie case. And the state's answer now seems to be that CMS or CMS doesn't apply until we establish that a video or a recording existed. But it's our position that we proved as much as we could. And the next step that we would have had to have taken to prove the existence that the recording was captured would have been for us to be calling the manufacturers or the suppliers or some expert who would have some knowledge about this equipment. I mean, clearly that would be an inappropriate burden to place on a defendant to cause a defendant to be responsible for proving the performance of the, let's say, insides of these mechanisms. So CMS or CMS, it has to be interpreted to mean what it says. What it says is the burden shifts to the state to show that its noncompliance was reasonable or the result of extenuating circumstances. We showed what we could show. We called several witnesses to show that the likelihood is that the squad equipment was functioning and, therefore, that it was recording. This opens the door to the state to say, why, then, is it lost? The question of whether it exists or it doesn't exist, I would submit to you, is highly fact-bound in terms of the nature of the proof. So usually we know if something existed. In all those examples of the cases where the state had the evidence and then it was later destroyed, well, it had the evidence, and, I mean, we know it was destroyed. This is a little bit more difficult because the question is a question of technology and a question of electronics. When did you file your motion to produce? A subpoena within a couple of days of the arrest was a subpoena within a couple of days of the arrest. And when did the police officer notice that the SIM card was empty? Before or after you? Before. So the evidence indicates that before you filed your motion to produce,  But, Judge, I mean, there is a state statute that indicates that the state is not free to dispose of evidence for 90 days. And, I mean, so... So the only solution that you're broaching is that every police officer and anybody involved with the inspection, testing, or whatever of that machine would have to come in and testify during this trial that they did not remove or erase or alter the SIM card in any way, shape, or form in order to establish that the evidence never existed or that the state never knowingly destroyed it. No, because we are not claiming a knowing destruction of the evidence. We are claiming a loss of the evidence. And that, you know, so, I mean, a destruction of the evidence would be totally a different case, I think, and probably would involve this bad faith question, which we have not pursued the bad faith question. Do you think that the trial court's findings are against the manifest weight of the evidence when it determined that there was no discovery violation because, as far as he was concerned, there was no evidence that the memory ever existed? I don't think that that's the finding that the trial court made in the first place. But, I mean, if it made that finding... A rhetorical question? I thought he said, I thought the trial court said something to the effect that I'm not even sure that the thing was ever existed. Correct. Correct. He did not resolve that issue. He did not make a finding as to whether it existed or whether it didn't exist. And it may be, I mean, I'm willing to go as far as to say that the testimony could be unclear on that question, in which case the State had the burden to show what happened. Okay, well, it's been fine. Thank you, Your Honor. Yes. We will take this case definitely under advisement, and court's adjourned.